Carlos Alberto, Enestroza-Tosta v. Atty Gen of the United States. Good morning, Your Honors, Anand Balakrishnan from the ACLU, on behalf of the petitioner. I'm dividing time with Ms. Lynn. I'll be addressing the jurisdictional and threshold reviewability questions that the court had issued a letter on. Ms. Lynn will be addressing the merits. With the court's permission, we'd like to reserve three minutes for rebuttal time. That time will come out of Ms. Lynn's time on the merits, and we will divide it as needed for rebuttal. Okay, that's fine. Let's dive right in on this jurisdictional information. I want to make sure I'm saying it right. Mr. Balakrishnan? Yes, that's correct, Your Honor. Okay. We ask you to be prepared to talk about a few cases. And let me, speaking for myself, tell you what I'm finding challenging here. The operative order of removal here is said to be the reinstatement of the prior order? That's correct, Your Honor. Okay. So if it is as the government contends it is, final because it's final when it was entered years ago, what does that mean for the rights of the petitioner? I'm sure that's what you're here to argue about. But as you're doing that, you know, take on these cases that are coming out of the Fourth Circuit and other places that say, hey, under NASRA and under Johnson, it is what it is. They're getting all the process they're due. They shouldn't have come back. They're out. I understand. And just to start, to clarify one point, our position, and it's been the position of this court and others, is that the operative order is the decision to reinstate the prior order of removal. But there are other places that say, no, it's the order of removal, right? My understanding, Your Honor, is currently both before the Second Circuit's decision and currently the courts have agreed that the decision to reinstate the prior order is the operative order during the reinstatement process. The question, however, is when that decision becomes final. Right. And if the order is the order reinstating the earlier order of removal, instead of me asking the question, I'll just ask you, why don't you do us the service of framing both sides of this and then tell us why your side is right? I think I understand what the arguments are. But put you in the awkward spot of explaining what's the best pitch the government's got, because they've got circuit courts on their side that say, after the Supreme Court's recent decisions, the finality has to be determined based on that earlier order, don't they? No. Well, I'll step back and try to frame it, as the court has invited me to. So my understanding is that at this point, there's actually agreement between the government and ourselves on this threshold question as to how you interpret what is the relevant order and when it is final. The government has sort of changed its positions a couple of times over the past year. And I think at this point, there's agreement. And where we are now, and the agreement is... I think there's agreement. There's agreement that the government's position and their courts have accepted that that order reinstating the earlier order is final immediately. No. So I think that the government has gone through a couple of positions. I'll let them sort of articulate where they stand today. But where we stand now in terms of the circuit courts of appeal are that there is a split on this issue. The second and the fifth have held that the decision to reinstate is the order and it's final as of the moment it's made. So it's separate from a withholding proceeding. Correct. The withholding proceeding does not affect the finality of it. On the other hand, the ninth, the sixth, and the tenth have all held on to what was the prior consensus of the courts of appeal that the reinstatement decision is the order, but it's not final. Indeed, our NPO in Barrios-Duenas seems to go that way.  Absolutely, Your Honor. And, you know, our position is that that decision in Barrios-Duenas and the ninth, sixth, and the tenth are the correct approach to the situation. Because, as Barrios-Duenas explains, the recent Supreme Court cases that the Second Circuit had relied upon, Nastrella and Guzman-Chavez, do not address the question presented, which is when does the reinstatement decision become final. And, moreover, Guzman-Chavez explicitly holds it open and does not purport to make a decision on it or upset the previous timing overview rule that this court and other courts had followed. That, I think, is particularly true in this circuit. Because, as the Ninth Circuit explained in its recent decision on this issue, Guzman-Chavez was a detention case in which it explained it held that for the purposes of the detention statute, the reinstatement decision was administratively final, while at the same time, as I just mentioned, Guzman-Chavez holds open the question as to what finality means in the judicial review context. This court had already reached that same decision that the Supreme Court did in Guzman-Chavez. In Guerrero-Sanchez, this court had noted that finality meant two different things based on the statute it was considering. So, for purposes of judicial review, this court had already understood that the reinstatement decision was not final until the completion of withholding-only proceedings, while at the same time understanding that for detention purposes, it was administratively final and thus no statutory bond hearing was required. Our position is that the logic in Barrios-Duenas is correct. The recent Supreme Court decisions are not patently inconsistent with this court's previous holdings and understanding of finality, and that course should remain. Yeah, you said an important thing, and we may very well agree with Judge Schwartz that it's not patently inconsistent. But, and I misspoke and said the fourth, I was thinking of the fifth and the Agueta-Hernandez case. The Fifth Circuit reversed field on this. The Second Circuit, as you pointed out, has taken a different view on this. And they seem to say that Nasrallah and Johnson are sending powerful signals here. So even if we thought, well, it's not patently inconsistent, should we be following the reasoning in an NPO, or should we be saying, look, there's a real problem here based on what the Supreme Court has said of late, which seems to be that these orders, a CAD order and a withholding order, are not final orders in the traditional sense. And that the finality question is logically looked at as that final order of removal that occurred previously. So that once you've got a decision at a reasonable fear stage or something like that, and the order is reinstated, it's final right then. That order is final right then. I mean, why is the Fifth Circuit, which reversed field on this, and the Second Circuit wrong in reading Nasrallah and Johnson or Guzman-Chavez? Why are they wrong in understanding that Supreme Court precedent that way? I mean, first, as a threshold matter, of course, if the court wants to reverse positions on reviewability, I do think that en banc review would be required. However, I think you're asking sort of just on the merits, if you're on a blank slate reading the Supreme Court decisions, what's the right way to approach this issue? And I think that the right way is what the Ninth Circuit and the unpublished decision of this court, how it interprets the statute. Because the Supreme Court wasn't talking or wrestling with the question of judicial review. When you say the statute, be specific, because they're not looking at the same statutes in Nasrallah and Johnson, right? Yes, that's absolutely correct. So here, you know, the relevant statutes are 1252B1, which, of course, is the petition for review to a final order of removal. The next relevant statutes are the statutory definition of order of removal and finality of an order of removal, which is in the definitional section 1101A47A and B, respectively. And, you know, the way to approach this is that, you know, the reinstatement decision qualifies as an order of removal under the statutory definition. It's a decision that establishes someone's removable and also orders them removed. The question then is, does the statutory definition of finality even apply to a reinstatement decision? The statutory definition of finality is tied to review by the BIA, the Board of Immigration Appeals, or the expiration of the time to petition for review. But the reinstatement decision cannot be appealed to the BIA. It cannot be appealed to an IJ either. It goes directly to the courts of appeals. So at a minimum, there is ambiguity as to whether the statutory definition of finality applies to the reinstatement decision context at all. And in light of that ambiguity, I think the courts have to turn to basic tools of statutory interpretation to determine when it's final. And there, you know, there's several key presumptions that come into play at that point. And the Supreme Court has never sort of troubled its application for this context. The first is, of course, the strong presumption of judicial review. The second being sort of the need to preserve review over constitutional claims. Now, when you say the need to preserve constitutional claims, the argument here, as I understand from the other side, is your client got all the process he was due. There is no constitutional claim here because there is no right. So we're really not so that that shouldn't really kick in. What's what's your best response to that? There's a number. First, there are the process. There are processes. Processes towards citizens are entitled specifically to protection under the withholding statute and the Convention Against Torture, which are mandatory prohibitions on removal to another country. Those oftentimes in reinstatement cases, the first and only time someone will be able to raise those claims of fear of persecution, torture, or even death will be after they've come back to the United States because the acts that have given rise to the fear occur only after the initial deportation. This is the reasonable fear and withholding only process are the first time those claims can be heard in many cases. And Congress has. And why is that? Explain that. Well, it's just a basic factual matter. If someone was deported, let's say 20 years ago and then returns, you know, 10 years later in that period of time, that may be when, you know, they might have been targeted by governmental forces, by gangs, you know, or experience the other bases for their fear. Things happen. But that's the reason that we have. I mean, we've signed on to those treaties with the country and they've been codified in statute. And it's been universally recognized by Congress as well as by the agency since 1996 when the reinstatement process was put in its current form that people need to be able to raise those fear claims before they're removed through the reinstatement process. Okay. Since we're running. My understanding, then, is that it's the fear of removal is contemporaneous with the position being taken rather than contemporaneous with the original order of removal. If I'm understanding correctly, I think I agree with that, which is that the fear claim needs to be able to be heard after, or, you know, as part of the reinstatement process, because it couldn't have been heard previously. Yeah, it can be part of events which have occurred since the original order of removal. Yes. Yes, I think that's correct. I have to admit, I'm having a little bit of difficulty hearing the question. So it is a bit diffused. But I think you did hear the question accurately, which was this is part of the reasonable fear determination. It's a microphone problem. Okay. Santos, Zakaria versus Garland. That very recent case. How does that play in here? So I think it plays in a couple of different ways. The most important is that I think after Santos-Zakaria, the best way to understand that the petition for review deadline at 1252B1 is as a non-jurisdictional statute. Which means what for this case? Which means that in this case, if the court decides that it's a non-jurisdictional statute, the government has, as I understand it, withdrawn its objection to the timeliness of the petition for review. And thus, the issue has been waived. It's only if a statute is jurisdictional that the court has to reach its sua sponte to decide it. If the timeliness issue is non-jurisdictional and it's been waived, the court may, therefore, proceed to review the case on its merits. It's correct. The Ninth Circuit sort of had two holdings there. First, sort of maintaining, you know, right. Yeah, exactly. And I think that's the right way to read the statute after Santos-Zakaria because it basically applies the normal principles, you know, under ARBA and subsequent cases, you know, to determine whether the INA's judicial review provisions are jurisdictional or not. So you think we get to the merits? Basically, yes, Your Honor. We better get to the merits. Thank you, Your Honor. Thank you. Good morning, Your Honors. My name is Cheryl Lynn. On behalf of Petitioner Carlos and Estreza as well. For purposes of today, I wanted to focus on today's arguments on point one of Petitioner's opening brief, which are the arguments regarding administrative closure. Unless Your Honors have questions on the remaining other two points, I'll rest on the brief. Well, I do have questions about your particular social group, but why don't you go ahead and make your opening pitch on what you want to, and I'll make sure I get my questions in. Okay. Certainly, Your Honor. In this matter, Mr. Estreza, who was a victim of serious physical assault in his home country as well as here in the United States, is seeking a remand in this matter because the Board of Immigration Appeals did not conduct the review it should have done. The Board was wrong to conclude that it did not have the authority to administratively close proceedings in a withholding-only proceeding, and even the government concedes that it has this authority in its answering brief. I won't speak for the government. However, the regulations and this court's decision in Arcos Sanchez are clear. The BIA, look, the IJ, you make a good deal in your briefing about the BIA not applying the Evetsian factors, if I'm saying that case name correctly, but the IJ applied them, right? The IJ did to some extent. I take issue that it did not consider all of the factors. However, the BIA did not expressly adopt the IJ's decision. Does the BIA have to expressly adopt it or, in upholding it, can the BIA be understood to have appreciated what the IJ said and accepted and adopted it? My understanding under Abdullah v. Ashcroft, the BIA should expressly adopt the IJ's decision. This is not a decision where there was an affirmance without an opinion. When you say should have, it may be that they should have done a better job. I'm asking you whether we've got some law or you've got some law I can point to which says if the BIA doesn't say, yeah, we looked at that and we like it and that's what we're adopting, is it the case that on petitions for review, the BIA's affirmance can be understood, even if it says some things on its own, as accepting reasoning from the IJ, no? My position is that the BIA has to expressly adopt under Abdullah v. Ashcroft. That it has to? Yes. Okay. In order for the court to review the IJ's decision. In this matter, the court should be reviewing the BIA's decision, in which it does not cite any of the Advocazian factors. In fact, it in some way conflates the administration closure framework with continuance, the continuance request. In fact, the case that the BIA cites, matter of Sanchez-Sosa and the matter of LNY, are all dealing with a continuance request, not an administrative closure request. All right. Time's limited, so let's talk about your particular social group issue. There's a, you have two of them here, right? Yes, Your Honor. How is that particular and socially distinct within the Honduran society? Well, I believe in that matter, his prior counsel and also in my brief, I addressed Cabrera v. Sessions. This is a Fifth Circuit case in which there was a finding that someone who protested, an individual who protested gangs was a particular social group. I believe that's what I relied on in my opening brief as well. The government seems, maybe I read it wrong, but they seem to say you forfeited this social group based on people who resist or protest gangs. Maybe I read that wrong, but I think that's what they're saying. Why should we be hearing that if that was not something, yeah. Why isn't it forfeited? Maybe that's the easiest way to say it. You read their brief. Do you understand their argument to be that you forfeited it? My understanding is that it was forfeited because the petitioner's prior counsel did not file a brief and did not, as a result, did not identify any... And raise it. But my understanding is that under the, that the notice, it was addressed in the notice of appeal. They had put the board on notice that there was... You can't just say something. I mean, doesn't the law require you to articulate the argument in front of the administrative agency in order to preserve it? You can't just say tort. You know, you got to explain what you're talking about and make your pitch, and it didn't happen, right? Well, in this matter, I do understand that my client's prior counsel only filed a notice of appeal. But in his appeal, he did make certain bullet points in which he did address each of the points in which that the IJ had erred as a matter of law, in terms of his withholding of removal request, as well as the request under commission against torture. Under Libu, as a matter of NACOMA, so long as an immigration petitioner makes some effort, however insufficient, to put the board on notice to place the board on notice of an issue, or he's on appeal, he meets the exhaustion requirement. In terms of, while my client was represented, unfortunately, his counsel failed to file a brief. In cases of, as a matter of public policy, of bringing access to pro se petitioners who may not have the sophistication to know to file a legal brief, that should be enough. That should be enough. I guess I got to ask, what are you relying on for that's enough? What's the legal authority you've got? It would be this court's liberal standard and issue exhaustion under JOSEPH. Okay. Speak, if you would, for just a moment about the assertion that your client's concerns about attacks earlier in his life, they're too attenuated in time to constitute a reasonable basis for fear or concern. Well, my understanding is that my client feared because he was subjected to persecution, in which the IJ did make that finding that he did suffer persecution. Based on the country conditions that were submitted in this matter, there's a history. There's like a 14-year gap, right? Correct, but the gang violence remains prevalent even to this day. The question isn't whether there's some generalized existence of a crime-ridden society. The question is whether this person has a reasonable fear, and the agency seemed to be saying, that's just so long ago, that's not a reasonable basis. That's what I'm trying to get you to speak to. Okay. So my understanding as an immigration practitioner where I represent many individuals who are fleeing gang violence in Central America, is there's one common thing that I see among all of my clients is the gang never forgets. So in other words, when he resisted gang recruitment- They would know him 14 years later, even though he was a kid back then and he's a mature adult now. They would know and they'd be looking for him. That's the position. Yes, he did live generally in these communities. They're small communities in which everyone, families, everyone know each other. So yes. All right. Well, thanks very much, Ms. Lynn. We will be hearing from one of you on rebuttal based on Ms. Lee's presentation and our questions to her. We'll leave that to you to decide after her argument, all right? Thank you, Your Honor. May I please- Sorry. May I please the court? Jenny Lee on behalf of the respondent, the Attorney General of the United States. I'm sorry, this is not working out so well. Okay. Go ahead and say a thing or two into that microphone, Ms. Lee. Go ahead. The government's position is that the court has jurisdiction over this petition for review because petitioner filed his PFR within 30 days after the withholding, only proceedings were completed. This court should follow what the Sixth, the Ninth, and the Tenth Circuit did to find that neither Nasrallah nor Guzman Chavez could clearly undercut this court's precedent. This court's precedent in Bonilla footnote four stated that the immigration- Doesn't the NPO, the non-presidential, doesn't that distinguish Bonilla? The court in- Barrios-Duenas? I believe that the court's approach in Barrios-Duenas was the correct approach in finding that the court's precedent was not overturned by Nasrallah and Guzman Chavez. We don't have any disagreement. There doesn't appear to be really any daylight between the parties here. But we do have a circuit split, so it helps us get some understanding. Maybe you can tell us why the Second and the Fifth Circuit are so terribly wrong. When they read Nasrallah and they read Johnson the way they do, why have they got it wrong? Or at one point you were following them, now you're not, and it's sort of like the state of the art has changed in terms of interpretation. And I may very well agree with you, but just explain what came about in terms of changing that thinking. Okay, those are two separate questions, so I will address Judge Jordan's question first. So the reason why the government believes that this court's approach in Barrios-Duenas is the correct approach is because neither Nasrallah nor Guzman Chavez dealt directly with the court's jurisdiction under 1252b-1. And in fact, the Supreme Court in Nasrallah clearly stated that it is not making a statement with regard to the jurisdiction of the courts of appeals. And in Guzman Chavez, the court similarly stated in footnote 6 that it expresses no opinion on the courts of appeals jurisdiction under 1252. So if the Supreme Court clearly stated that it is not expressing a view with regard to jurisdiction under 1252, we can't say that Bonilla is clearly inconsistent with the Supreme Court's cases. Was this the kind of – I guess maybe this is going to Judge Ambrose's question. You're right, they're separate arguments, but they're pretty tightly interrelated. Maybe understanding why the Department of Justice has shifted will help us understand something. When Bhakti Bai Patel v. Garland was argued in the Second Circuit, was the Department of Justice making the argument you're making here? Yes, that has been a long-held argument that the government has made, that the 30 days is counted after the withholding only proceedings are completed. Of course, the Second Circuit was free to determine its own jurisdiction, and it did so contrary to the arguments that we made. And why don't you explain to us why the reasoning that they gave in the face of the government's own position about jurisdiction was wrong. When they looked at Ms. Rolla and Johnson and said, hey, our own precedent in Gwere Shanahan is wrong, it can't stand in the face of the way the Supreme Court is running things, appears to be interpreting things now. Where did they misstep? So for a while, as the Court is aware, we did agree with the Second Circuit, but the Supreme Court's decision in Santo Sakaraya, which basically said that its own statement that the predecessor to the 1251B1 was mandatory and jurisdictional, that that was a... Loose language. Yes, loose language. It was a drive-by jurisdictional holding. And so based on the Supreme Court's decision in Santo Sakaraya, the Department of Justice decided to take a closer look at this question, and then, of course, the Supreme Court came up with other decisions before Santo Sakaraya, which led to Santo Sakaraya, in Wilkins, Beckler, and Nutraceuticals, which basically they were rejecting our jurisdiction timeliness argument based on the statute because Congress did not clearly state that they intended 1251B1 to be jurisdictional. So because of that, we reassessed our position, and then it appears that the Second Circuit may also be reassessing its position because after Santo Sakaraya, the Second Circuit has asked for a briefing on whether Santo Sakaraya affects Patai Patel. Okay. The only question was the light of what the Ninth Circuit has done in anticipating what Santo Sakaraya says, which is that perhaps even here, 1252B1 determination is non-jurisdictional rule in the first place. What is your comment on that? So I believe that is a correct statement, but as Judge Ambrose has stated, the courts aren't really clear on this. Obviously in Patai Patel, which is before Santos, they cited to stone saying that 1252B1 was mandatory jurisdictional. The Fifth Circuit also cited to stone for the same proposition. The Sixth Circuit in Kolov also cited to stone for the same proposition. And then in Alonzo-Hart, the Ninth Circuit said, no, it's not jurisdictional, but it is mandatory. And then in the Tenth Circuit, they also cited to stone, sorry, they cited to Luna probably that was citing to stone that 1252B1 was mandatory and jurisdictional. And in the Third Circuit's unpublished case, Barrios-Duenas also said that 1252B1 was jurisdictional. So there's a lot of flux here. There's a lot of confusion amongst the courts of appeals as to whether 1252B1 is jurisdictional or not. The government's position is that for this case, the court does not need to decide it because the issue, I think, in this case is what is the final order that gives this court authority to review? Your position is it's not jurisdictional? That is correct. It is mandatory but not jurisdictional. Based on a reading of Santos-Zachariah, and we see the writing on the wall as to where the Supreme Court will be going with 1252B1. Well, in the time you've got, unless my colleagues have other jurisdictional arguments, why don't you address the Meriton? And it seems that Mr. Inostroza-Tosta wants to talk about administrative closure as the primary argument. So why don't you take that up? Sure. So withholding of removal only proceedings is in a different posture than a normal removal proceeding, obviously. And so all the case law that we have on admin closure, such as Abitizian, this court's precedent, deal with removal proceedings. That is why the board's statement, that assuming arguendo that we have a jurisdiction over this, is sufficient to find that, sufficient to find that it did not abuse its discretion denying administrative, sorry, an affirming immigration judges order denying admin closure. And as judge Jordan stated, we look to the immigration judges, the courts of appeals look to the immigration judges decision to see what informs the board's decision. Does Abdullah require the BIA to say explicitly I'm adopting, we're adopting? No, your honor, as long as the court, the board is affirming, that should be enough. And we look at the immigration judges decision to inform where the board is coming from. Even if the board says some provide some reasoning of its own. Yes. The board is welcome to add to the immigration judges decision. And so again, the agency's decision on admin closure is highly deferential and with the withholding only proceeding, we don't have any standards for the, for the course to review on whether the agency abuses discretion. So for those reasons and the reasons stated in our brief, we believe that the agency's decision on administrative closure is correct with regard to the judge Jordan's question on particular social group. Petitioners are trying to raise a new social group of people who object to gang recruitment, but in the administrative record, this is even before the notice of appeal was filed petitioners council clearly forfeited that particular social group. Immigration judge specifically asked him, do you have more than one particular social group? And he clearly stated no. And that's at the administrative record at 100. How about the argument that's being made here that there was, there was an appeal filed and there was enough said in that notice of appeal should have put, should put the BIA on notice. As this court is aware, the particular social group is a very complicated area of law now. And there are, there's a reason why the board and matter of WIC said, you must articulate the particular social group in front of the immigration judge. You can't just come by and come up with a new one now. And that's basically what petitioners are trying to petitioners is trying to do. Because they specifically forfeited that second social group. Would we, would we get into the PSG issue? If we were dealing just with the attenuation of harm or is that attenuation of harm reasoning stand independent? It's an alternate. I mean, it's an alternative reason for why withholding was denied. And with regard to the attenuated, let's look at the facts here. The petitioner, when he was 11 years old in the year 2000, he was harassed by gang members and harmed. And then in 2007, when he moved to his grandfather's hometown, he was beaten by gang members who wanted him to join and sell drugs for them. And then he moved again in 2008 and nine. And he said that there were shots at his door. He didn't see who shot the door. And then that was enough. And based on that, the agency said, you can't show a clear probably that it's more likely than not that you have a well-founded fear of future harm. So we're, we're right in understanding the BIA's decision as just like a straight up attenuation. It's too long ago. It's too far in the past. There's not an indication that this is going to be a problem for you in the future. Is that, is that what the BIA was saying? That's one of the things that was saying yes, your honor. Okay. I understand. They also said like it's pure speculation that the gunshots that you were aimed at, you know, that hits your apartment building were aimed at you. I understand all that, but I'm trying to, maybe this is the best way to say it. You clearly think, you know, there's jurisdiction, but this gentleman loses on the merits. That is correct, your honor. And from the government's perspective, what's the clearest route on the merits point? Because they've raised a whole series of things that they say should, should derail what the BIA did that the administrative closure decision was wrong. The attenuation decision was incorrect because gangs never forget the PSG decision was fairly in front of the court or the BIA, but it didn't deal with it. They've got a series of things you're making. What do you think on behalf of the government cuts through that? If anything? Well, obviously as stated in our brief, we think that with regard to the administrative closure, even if we were to deal with assuming that they did have jurisdiction over administrative closing, withholding only proceeding, the agency did not abuse its discretion with regard to withholding. Petitioner cannot establish an exit to a particular social group, a protected ground for that relief. And also he can't show a well-founded, sorry, not well-founded fear that it is more likely than not, that he will be persecuted on the basis of his protected ground. Okay. And just as we're wrapping up here and make sure I understand, what is the government's view on the finality of the order? We've got jurisdiction. How do you define finality? So with regard to finality, you know, it's not as simple as, um, as what Nasrallah dealt with because in Nasrallah we were dealing with, um, well, why isn't it as simple as, um, as Mr. Balakrishnan was saying, which is the Supreme court has never said anything that would undermine the underlying basic principles, uh, of judicial review. There's a presumption of judicial review. There's particularly a presumption of judicial review when due process and other constitutional rights are in play. And so it makes no sense to say it's final immediately upon the re-imposition of the order. It, there has to be some room for review. That's, I take their argument to be what's wrong with it. Um, the government's position says nothing wrong with it, but obviously there is tension in the various courts of appeals, um, on their reading of the Supreme court cases. And what's the government's position about finality? So the government's position on finality is that the, that the reinstatement order is not the final order for the court's review. Instead, the final order for the court's review is the final determination on the withholding only proceedings, because, um, there are various principles as to, I'm sorry, just repeat that last part. Sure. Um, the final order for the purposes of 1252 B one is the agency's final determination on the withholding only proceedings, the agency's EOIRs, um, the immigration judge and the boards. And so, uh, that's subject to judicial review. Yes, Your Honor. So once again, we've got agreement, we have agreement on this. And, um, as petitioners counsel stated, it's because there is a presumption of judicial review in these cases, the principles of admin law, we want to review everything at once. Um, and then there's a zipper clause at 1252 B nine saying, let's look at everything once, um, all issues are resolved. And that's what the courts have held for a very long time until the 1272 was adopted and they repeated it five times. But it doesn't mean that's what the courts have decided. This amendment would be passed just in two years after they had  Um, I believe it will actually go through for a longer time. Okay. All right, let's take a look at the first petition. Thank you, Your Honor. Thank you, Your Honors. I do want to bring up that since, with respect to administrative closure, the government has repeatedly said that the board didn't abuse its discretion, which, while I do agree that this court reviews unabusive discretion standard, but the board should have conducted its own de novo review in terms of administrative closure. Even in the BIA's decision in this very case, it says we review all issues including issues of law, discretion, or judgment under a de novo standard, and it cites the ACFR 1003.1D32. So, once again, it sounds to me like you're making an argument that the BIA didn't say enough. Correct. It did not conduct its own de novo review. We would have to say there was an abuse of discretion because it didn't say enough. Yes. Okay. What difference would administrative closure have made in this case? I mean, it's very nice to close it out, but so what? Well, what it would do in this case, it would allow for Mr. Anastros' U-Visa application in which he was a crime victim of a very serious physical assault where he had to be hospitalized, and he cooperated with law enforcement in this case. It would allow for USCIS to adjudicate that application. Wouldn't that have gone forward anyway? Yes, but he may have been deported in the process into a country where he fears return. Okay, but if there had been administrative closure, wouldn't that have prevented him from being deported in the process? Yes, because his withholding of removal case would have been held in advance. Okay. All right. Unless you have something further. I only just want to point out to the court, I believe it was in my opening brief, but in terms of issue exhaustion, I just want to point out that there is a motion to reopen pending based on ineffective assessments of counsel due to the prior counsel's failure to file a brief. Notwithstanding that, it's still petitioner's position that the court can still remand this matter based on what we've argued previously. Okay. We thank all counsel for their argument on this. We would like to get a transcript of this. We'll ask the government if it wouldn't be good enough to arrange for that. All right, and we've got the matter under advisement. We'll recess court.